# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| ANTOINE POTEAT,<br><br>Plaintiff,<br><br>v.<br><br>DETECTIVE LEE GIBSON,<br><br>Defendant. | Civil Action No. TDC-17-1903 |

## MEMORANDUM OPINION

Plaintiff Antoine Poteat has filed this action against Defendant Lee Gibson, a detective of the Charlottesville, Virginia Police Department, for unlawful seizure and deprivation of liberty in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Pending before the Court is Gibson's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6). Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

On June 18, 2013, Poteat, who was living in Charlottesville, Virginia, was the victim of a burglary at his home. The masked intruders shot Poteat in the leg and ankle and stole money from his residence. Poteat called 911 when the burglars left, and officers from the Charlottesville Police Department arrived at Poteat's residence. When asked to identify the burglars, Poteat told the police that he was unable to observe their faces and did not know who they were. However, the police continued to question Poteat and even refused to let emergency medical personnel into the home to treat Poteat, who was bleeding, because he had not identified the perpetrators. At some

point after the questioning, the officers conducted a warrantless search of the residence and brought a drug-sniffing dog to the premises, but they found no drugs. During this search, however, the officers discovered a firearm. Poteat was not arrested at that time.

In November 2013, Poteat and his family moved to Maryland. Then, on February 25, 2014, Gibson requested a warrant from a Virginia court for Poteat's arrest for illegal possession of a firearm and controlled substances on June 18, 2013, the day that Poteat's residence was burglarized. At that time, Poteat was unaware that the warrant had been issued.

On May 17, 2014, Poteat was pulled over by a police officer while driving in Maryland. Based on the outstanding Virginia arrest warrant, of which Poteat was still unaware, the officer arrested him. Poteat was jailed for 12 days in Maryland before he was extradited to Virginia to face the charges. Poteat remained detained in Virginia until July 10, 2014, when the charges against him were dismissed. Poteat alleges that Gibson obtained the warrant even though he knew the charges were false, because Poteat's firearm was lawfully registered in his name and the officers had found no drugs during their search of Poteat's residence on June 18, 2013.

Poteat filed his Complaint in this Court on July 10, 2017. Poteat asserts claims against Gibson under 42 U.S.C. § 1983 for violating his Fourth Amendment and Fourteenth Amendment rights. Specifically, Poteat alleges that by obtaining a warrant based on false allegations, Gibson violated his rights to be free from an unreasonable seizure and to due process of law.

## DISCUSSION

In his Motion to Dismiss, Gibson asserts that this Court must dismiss the case (1) under Federal Rule of Civil Procedure 12(b)(2), because it lacks personal jurisdiction over Gibson; (2) under Rule 12(b)(3), because the District of Maryland is not the proper venue; and (3) under Rule 12(b)(6), because Poteat's claims are barred by the statute of limitations.

I.  **Personal Jurisdiction**

Gibson first asserts that this Court lacks personal jurisdiction over him because he has insufficient contacts with Maryland. At the pleading stage, the plaintiff must make a *prima facie* showing that the defendant is properly subject to the court's jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). In evaluating the plaintiff's showing, the court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Id.* at 60. The court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion. *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763–64 (D. Md. 2009).

Gibson, a police officer in Charlottesville, Virginia, asserts that his contacts with Maryland are insufficient to allow this Court to exercise personal jurisdiction over him. A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the forum state and the Due Process Clause of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Poteat alleges that the Maryland officers who arrested and jailed him were acting as "tacit agents" of Gibson. Compl. at 2, ECF No. 1. Thus, Poteat relies on the provision of the Maryland long-arm statute that authorizes jurisdiction over a party who, either "directly or by an agent," "[c]auses tortious injury in the State by an act or omission in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) (West 2018). Because courts have interpreted the Maryland long-arm statute to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The due process analysis requires a showing that Gibson has sufficient "minimum contacts" with Maryland such that "maintenance of the suit [in this state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts distinguish between two types of personal jurisdiction: general and specific. General jurisdiction offers a path to personal jurisdiction when the party has affiliations with the state that are "so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction provides jurisdiction "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Here, Poteat does not allege that Gibson maintains "continuous and systematic contacts" with the forum state, so he must establish specific jurisdiction over the defendant. *See id.* at 416.

In order for a court to exercise specific personal jurisdiction over a defendant, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," and its "conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). These requirements are satisfied if the defendant purposefully directed its activities at the residents of the forum state, and the cause of action "results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

The United States Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), is a particularly instructive application of these principles. There, the Supreme Court considered whether a Nevada court could exercise personal jurisdiction over the defendant, a Georgia police

4

officer. *Id.* at 279. The defendant served as a deputized agent of the Drug Enforcement Administration ("DEA") at Atlanta Hartsfield-Jackson Airport and confiscated funds from the plaintiffs while they were traveling through the airport on the way from Puerto Rico to Nevada. *Id.* at 279–80. After the officer seized the funds, he helped draft an affidavit asserting that there was probable cause for forfeiture of the funds. *Id.* Ultimately, no forfeiture complaint was filed, and the DEA returned the funds to the plaintiffs in Nevada. *Id.* at 280–81. The plaintiffs then filed suit against the officer in a Nevada court, alleging that the officer violated their Fourth Amendment rights by seizing the funds without probable cause and knowingly drafting a probable cause affidavit containing false statements. *Id.* at 281.

The Supreme Court held that the officer lacked the minimum contacts with Nevada necessary for the court to exercise personal jurisdiction over him. *Id.* at 288–89. The Court noted that none of the officer's actions occurred in Nevada and that the "mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 289, 291. The Court rejected the argument that the effect of the officer's conduct was connected to Nevada in such a way that it supplied a proper basis for the exercise of specific jurisdiction. *Id.* at 289–90. The Court reasoned:

> Respondents (and only respondents) lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioner. Respondents would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had.

*Id.* at 290.

Applying the reasoning of *Walden*, this Court concludes that Poteat has failed to make a *prima facie* showing that Gibson has sufficient minimum contacts with Maryland such that he may be subject to this Court's exercise of jurisdiction. Poteat alleges that Gibson requested an arrest

warrant in Virginia based on knowingly false allegations that led to Poteat's wrongful seizure and detention in Maryland and Virginia. However, as in *Walden*, Poteat does not allege that any part of Gibson's course of conduct occurred in Maryland, or that Gibson directed any conduct towards Maryland itself, such as by making inquiries to Maryland law enforcement officials about the warrant or taking other steps to execute the warrant there. *See Walden*, 571 U.S. at 288–89. *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 693–94 (9th Cir. 2001) (holding that a California court had personal jurisdiction over New York law enforcement officials who took "deliberate actions" in working with Los Angeles Police Department officials to arrange for the extradition of a fugitive, including regularly communicating with the LAPD, sending them an "identification packet," and traveling to Los Angeles to escort the fugitive). Indeed, Poteat does not even allege that Gibson knew that Poteat had moved to Maryland. Rather, Gibson's only alleged connection to Maryland is that, presumably based on an interstate database, a Maryland police officer fortuitously discovered and executed the arrest warrant Gibson had requested in Virginia three months earlier. Under these circumstances, the Court finds that Gibson did not engage an agent in Maryland, or otherwise purposefully direct activities toward Maryland, and therefore is not subject to this Court's jurisdiction. *See Walden*, 571 U.S. at 288–89. Gibson's mere request of an arrest warrant in Virginia, the existence of which was observable to Maryland law enforcement officials, is not an activity that can support this Court's exercise of jurisdiction over him.

Notably, courts that have considered the precise question at issue here—whether a court has personal jurisdiction over an out-of-state law enforcement officer based on that officer's application for a warrant that is later executed in the forum state by local law enforcement officers—have found insufficient contacts to support personal jurisdiction. *See, e.g., Doe v. Del. State Police*, 939 F. Supp. 2d 313, 333–35 (S.D.N.Y. 2013) (holding that a New York court lacked

personal jurisdiction over a Delaware police department where its officer had obtained a warrant for the plaintiff's arrest in Delaware and that warrant was later executed in New York during a traffic stop); *Bush v. Adams*, No. MAM-07-4936, 2008 WL 4791647, at *12 (E.D. Pa. Nov. 3, 2008) (holding that "[m]erely obtaining an arrest warrant for someone who is known to be in another state is not sufficient to subject the officer obtaining the warrant to personal jurisdiction in that state," even when the officers had made inquiries into Pennsylvania seeking to have the warrants executed).

Because Poteat has failed to make a *prima facie* showing that the exercise of personal jurisdiction over Gibson would comport with due process, the Court will grant the Motion to Dismiss based on lack of personal jurisdiction. The Court therefore need not address Gibson's other arguments for dismissal.

## II. Transfer

Having granted the Motion, the Court next considers Poteat's request that the Court not dismiss the case outright, but instead transfer it to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1404(a) or § 1406(a). Gibson objects to Poteat's request to transfer on a number of grounds, including that a transfer is not "in the interest of justice" because Poteat's suit is clearly time-barred by the applicable statute of limitations.

Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (2012). This provision presupposes that venue is proper in the court in which the suit was originally filed. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). 28 U.S.C. § 1406, on the other hand, authorizes a district court to transfer a case when it was filed in an improper venue. 28

U.S.C. § 1406(a). This provision states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* The Court need not determine whether venue is proper in this district, and thus which provision would be the appropriate procedural tool to effectuate a transfer, because the Court finds that transfer is improper under both provisions as not "in the interest of justice." 28 U.S.C. §§ 1404, 1406.

Poteat's claims are brought under 42 U.S.C. § 1983. Federal law determines the accrual date of a § 1983 cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). As Poteat acknowledges, his § 1983 claims accrued when the charges against him were dismissed on July 10, 2014. *See Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181, 183 (4th Cir. 1996) (holding that a § 1983 claim for an unconstitutional arrest made pursuant to a warrant accrues when there is a termination of that criminal proceeding favorable to the accused). He does not allege that the statute of limitations was tolled at any point after that date.

Although § 1983 does not contain its own statute of limitations, the Supreme Court has held that for § 1983 claims, courts should apply the state law statute of limitations for personal injury torts. *Wilson v. Garcia*, 471 U.S. 261, 275, 280 (1985). The state law to apply is that of the forum state. *See Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993) ("*Wilson* requires district courts to look to the most appropriate state statute of limitations. We have held that federal courts should follow the limitations period set by the state in which the district court sits.") (citations omitted); *Almond v. Kent*, 459 F.2d 200, 203 (4th Cir. 1972); *see also Jones v. Kirchner*, 835 F.3d 74, 81 (D.C. Cir. 2016); *Uboh v. Reno*, 141 F.3d 1000, 1002 (11th Cir. 1998); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) ("Of course, for a § 1983 action, the court looks to the forum state's personal-injury limitations period."). The United States

8

Court of Appeals for the Fourth Circuit has held that for § 1983 cases brought in Virginia, to which Poteat seeks to have the case transferred, Virginia's two-year statute of limitations for personal injury actions, Va. Code Ann. § 8.01-243(A) (West 2018), applies. *See A Society Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (applying Virginia's two-year statute of limitations to a plaintiff's § 1983 claim brought in Virginia) (citations omitted); *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 735 (4th Cir. 1991); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001). Because Poteat filed his Complaint on July 10, 2017, three years after his claims accrued, his suit would have been dismissed as untimely if filed in the Western District of Virginia and would be subject to dismissal if transferred there now.

Because it is clear from the face of the Complaint that Poteat's suit is barred by the statute of limitations applicable in the Western District of Virginia, transfer is not "in the interest of justice." 28 U.S.C. §§ 1404(a), 1406(a). It would be both a waste of judicial resources and an injustice to Gibson to transfer the case to that District merely to have him re-assert his statute of limitations defense. *See Waytes v. City of Charlottesville*, 153 F.3d 725 (4th Cir. 1998) (unpublished table decision) (holding that it was not in the interest of justice to transfer the case to another district where the case was subject to dismissal as time-barred); *see also Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (finding that transfer under § 1404(a) "would be futile and as such contrary to the interest of justice" where the action was clearly barred by the applicable statute of limitations); *Viaggio v. Field*, 177 F. Supp. 643, 645 (D. Md. 1959) (concluding that it would not be "in the interest of justice" to transfer a case to the Eastern District of Pennsylvania under § 1406(a) because the Pennsylvania statute of limitations had long since run).

## CONCLUSION

For the foregoing reasons, Gibson's Motion to Dismiss is GRANTED, and Poteat's request to transfer the case to the Western District of Virginia is DENIED. A separate Order shall issue.

Date: December 6, 2018

THEODORE D. CHUANG
United States District Judge